UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT JUHASZ,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 1:24-cv-12367-IT |

MEMORANDUM & ORDER

November 25, 2026

TALWANI, D.J.

Plaintiff Robert Juhasz brings this suit for negligence under the Jones Act, 46 U.S.C. § 30104, unseaworthiness under general maritime law, and maintenance and cure against Defendants Regents of the University of California ("Regents") and the United States of America. The action arises out of an injury sustained by Juhasz while working as an employee of the Regents onboard the R/V ROGER REVELLE ("ROGER REVELLE" or the "Vessel"), a research vessel owned, constructed, and designed by the United States.

In opposing Defendants' Motion for Partial Summary Judgment [Doc. No. 56], Plaintiff relied upon the expert report of Thomas Hill ("Hill Report") [Doc. No. 58-1]. See Mem. Opp'n to Mot. for Partial Summ. J. Ex. H [Doc. No. 67-8]. In response, Defendants filed the pending Motion to Exclude Thomas Hill as an Expert [Doc. No. 74].

For the reasons set forth herein, the motion to exclude is DENIED IN PART and GRANTED IN PART.

## I. Standard of Review

At the outset, "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." Fed. R. Evid. 104(a). A witness "qualified as an expert by knowledge, skill, experience, training or education" may offer expert testimony only if (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (b) "the testimony is based on sufficient facts or data;" (c) "the testimony is the product of reliable principles and methods;" and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The party proffering expert testimony must show, by a preponderance of the evidence, that the testimony satisfies the requirements of Rule 702. See Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC, 752 F.3d 82, 96 (1st Cir. 2014). Courts have a "gatekeeping responsibility" to determine whether the testimony an expert seeks to offer satisfies these criteria. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 n.7, 592 n.10 (1993).

"Rule 702 has been interpreted liberally in favor of the admission of expert testimony." Levin v. Dalva Bros., Inc., 459 F.3d 68, 78 (1st Cir. 2006). "As such, expert witnesses need not have overly specialized knowledge to offer opinions." Id. Further, expert testimony supported by relevant experience is permitted under the Federal Rules of Evidence. See Fed. R. Evid. 702 advisory committee notes, 2000 amend. ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony"). "If a witness relies primarily on experience, she must 'explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably

applied to the facts.'" U.S. ex rel. Jones v. Brigham & Women's Hosp., 678 F.3d 72, 94 (1st Cir. 2012) (quoting Fed. R. Evid. 702 advisory committee notes, 2000 amend.).

With respect to the reliability of the principles and methods applied, "[i]n Daubert, the Supreme Court set forth four general guidelines for a trial judge to evaluate in considering whether expert testimony rests on an adequate foundation: (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 25 (1st Cir. 2006) (internal quotation omitted). "However, these factors do not 'constitute a definitive checklist or test,' and the question of admissibility 'must be tied to the facts of a particular case.'" Id. (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999)). "The object of Daubert is 'to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" Milward v. Acuity Specialty Prod. Grp., Inc., 639 F.3d 11, 15 (1st Cir. 2011) (quoting Kumho Tire, 526 U.S. at 152).

The Daubert inquiry as a whole is less stringently applied in bench trials, where the concern of keeping unreliable expert testimony from a jury is not present. See 58 Swansea Mall Drive, LLC v. Gator Swansea Prop., LLC, No. CV 15-13538-RGS, 2017 WL 9885338, at *1 (D. Mass. Sep. 20, 2017) ("This cautious approach [to excluding expert opinions] is even more warranted in a bench trial."); In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 613 (8th Cir. 2011) (finding that "[t]he main purpose of Daubert exclusion is to protect juries from being swayed by dubious scientific testimony[,]" and that a "less stringent application of Daubert in

bench trials" is appropriate); United States v. Brown, 415 F.3d 1257, 1268 (11th Cir. 2005) (finding that the Daubert inquiry is "even more relaxed in a bench trial situation, where the judge is serving as factfinder and we are not concerned about dumping a barrage of questionable scientific evidence on a jury") (internal quotation omitted).

## II. Discussion

### A. *Qualifications and Experience*

#### 1. Naval Architecture

Defendants contend that Mr. Hill should be excluded as an expert because, as a marine surveyor, he "lacks the necessary experience to be qualified to render opinions on ship design and naval architecture." Mem. ISO Mot. to Exclude 8 [Doc. No. 75]. Defendants argue that only individuals with "a degree in naval architecture" may "opine on ship design." Id. In support of this proposition, Defendants cite several out-of-circuit cases in which experts with degrees in naval architecture were found qualified as experts. See id. (citing In re Savage Inland Marine, LLC, No. 1:19-CV-536, 2021 WL 2935300, at *3 (E.D. Tex. Jan. 22, 2021); MS Amlin Marine NV v. Delta Marine Indus. Inc., 348 F.R.D. 658, 673 (W.D. Wash. 2025)). As Plaintiff correctly points out, neither case holds that such a degree is required; both cases merely involve circumstances where the experts in question had naval architecture degrees. In any event, such a holding would be an anomaly, as the Federal Rules of Evidence clearly contemplate expert witnesses qualified by relevant experience rather than formal education. See Fed. R. Evid. 702 advisory committee notes, 2000 amend. ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony"); Brigham & Women's Hosp., 678 F.3d at 94 (quoting Fed. R. Evid. 702 advisory committee notes, 2000 amend.).

Defendants concede that Hill "does have experience as a marine surveyor" but question his experience as concerning "small cruise vessels" rather than "large research vessels," and argue that "any opinions that concern naval architecture or design are not within the same sphere of knowledge." Mem. ISO Mot. to Exclude 9 [Doc. No. 75]. Nowhere, however, do Defendants clearly define the difference between a "naval architect" and a "marine surveyor." At various points they posit that naval architecture involves questions of "design" whereas a marine surveyor evaluates "the condition of vessels" or "is someone who surveys, inspects, and determines damages to marine equipment . . . ." Compare id. at 10 with id. at 8, 5 (internal quotations omitted).

Defendants object to Hill's conclusions "such as a missing pad-eye over the step in the gated catwalk, the metal grating of the catwalk, and that the portside catwalk was not suitable for this job" as impermissibly "relating to the Vessel's design." Id. at 9. That these statements may concern architecture or design rather than the Vessel's condition does not make them outside the scope of Hill's expertise, and certainly not to a degree warranting exclusion at the Daubert stage. Hill generally offers opinions "to a reasonable degree of professional certainty," based upon his personal examination of the ship and review of relevant record evidence, regarding the safety of the vessel and of the methods of transportation utilized on the vessel. See generally Hill Report ECF 3–5 [Doc. No. 58-1]. If Defendants believe Hill lacks sufficient understanding to opine on such questions, cross-examination is the more appropriate avenue to seek to undermine his credibility.

2. The Injury Itself

Defendants contend that as a marine surveyor, Hill "lacks the experience to opine on the causation of the hoisting operation and Juhasz's injury." Mem. ISO Mot. to Exclude 7 [Doc. No. 75]. They argue further that Hill's "opinions regarding the etiology of how Juhasz tore his bicep"

should be excluded because Hill "is not qualified or experienced in the field of ergonomics or etiology that would be required to explain this incident[.]" Id. at 5. As set forth above, Hill is qualified as a marine surveyor, based on his experience in the industry, to provide opinions regarding naval rigging, fittings, equipment, planning, and seamanship. See Hill Report ECF 11–12 [Doc. No. 58-1].

Hill's expertise, however, goes no further than questions of naval safety and design. Accordingly, Hill's opinions must end before speculating as to the impact of the ship's design on Juhasz's injuries or the ways in which Juhasz was injured. Although Defendants do not specifically point to where in Hill's report they contend he impermissibly speaks to etiology or ergonomics, they appear to be referring to three causation statements: "This would have prevented his injury[,]" Hill Report ECF 4 (Opinion 1) [Doc. No. 58-1], "[t]his failure contributed to the cause of the injuries suffered by the plaintiff[,]" id. (Opinion 2), and "[i]t is this writer's opinion that this failure directly contributed to Plaintiff's injuries." Id. (Opinion 3).[1] But only medical experts can credibly testify as to the specific cause of an individual's injuries. See Hunt v. Covidien LP, No. 22-10697-RGS, 2024 WL 2724144, at *5 (D. Mass. May 28, 2024) (holding that expert who "is not a medical doctor . . . cannot credibly testify as to any specific cause of [plaintiff's] injuries"). Plaintiff did not retain Mr. Hill as a medical expert for good reason—he is not qualified as one.

The portions of Mr. Hill's expert report that opine specifically on how the ship's alleged deficiencies caused Juhasz's injuries are therefore struck and will not be credited by the court in ruling on Defendants' Motion for Partial Summary Judgment [Doc. No. 56] or at trial.

[1] The court addresses Mr. Hill's causation statement in Opinion 8, Hill Report ECF 5 [Doc. No. 58-1], in Sec. II.C Ultimate Issue.

B. *Reliability*

1. Methodology

Defendants contend that Mr. Hill "should be excluded as an expert since his opinions lack methodology[.]" Mem. ISO Mot. to Exclude 12 [Doc. No. 75]. Although Defendants do not dwell on this argument, the court will briefly address it given the importance of "reliable principles and methods" to the inquiry at hand. See Fed. R. Evid. 702(c). In preparing his report, Mr. Hill conducted a physical inspection of the vessel, reviewed multiple depositions, exhibits, and other pieces of record evidence, analyzed photographs of the incident site, researched public vessel data, and compared the evidence against his knowledge of industry customs and practices as acquired over decades of experience. Hill Report ECF 3 [Doc. No. 58-1]. The court considers those methods to have a "reliable basis[,]" and will therefore credit Mr. Hill's opinions rooted in such methodology. See Kumho Tire Co., 526 U.S. at 148.

2. Failure to Consider the Factual Record

Defendants' primary argument for exclusion of Mr. Hill's testimony is that his report is unreliable as based on "false, cherry-picked, and mis[s]tated facts[.]" Mem. ISO Mot. to Exclude 10 [Doc. No. 75]. They contend that this warrants exclusion for two reasons: first, because "altered facts and speculation . . . will not assist [the court] as the trier of fact" and second, because his "failure to consider the factual record [] and incomplete narrative" is overly prejudicial pursuant to Federal Rule of Evidence 403. Id. at 15, 17.

To be sure, "[i]f an expert 'cherry picks' favorable data . . . ignor[ing] a significant quantity of other important facts, the trial court would be justified in concluding that the expert's testimony is not based on sufficient facts or data." 29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6268 (2d ed. 2017); see also United States ex rel. Bawduniak v. Biogen Idec, Inc., No. 12-cv-10601-IT, 2022 WL 2662678, at *8 (D. Mass. July 8, 2022). In

support of their cherry-picking argument, Defendants go through each of Mr. Hill's eight opinions and identify testimony they contend he should have credited or declined to consider in reaching his conclusions. Although experts may not "parrot the conclusions of other witnesses," they "may rely on other witness's testimony or other expert conclusions to form an opinion." Iconics, Inc. v. Massaro, 266 F. Supp. 3d 461, 469 (D. Mass. 2017). Furthermore, while experts must rely on some data or evidence to support their conclusions, the strength of an expert opinion's factual underpinnings "is a matter affecting the weight and credibility of the testimony[.]" Milward, 639 F.3d at 22 (internal quotation omitted).

Defendants' claims that Mr. Hill considered the wrong evidence or gave weight to certain testimony over others are better suited for cross-examination, where the factual record at trial may be used to undermine the credibility or weight of an expert's opinion. Opinions 1 and 5 are based upon Mr. Hill's personal observations and inspection of the vessel. See Hill Report ECF 3–4 (Opinion 1), ECF 5 (Opinion 5) [Doc. No. 58-1]. Opinions 3, 4, 5, and 6 directly rely upon witness testimony and cite specific pieces of record evidence. Id. at ECF 4–5. Opinions 6 and 7 are grounded in "industry custom, practices, and basic seamanship applicable at the time," conclusions that Mr. Hill's decades of experience as a marine surveyor allow him to make. Id. at ECF 5. While the strength or persuasion of Mr. Hill's opinions may well be undermined by the trial record, exclusion of Mr. Hill's opinions would be premature where Mr. Hill relies upon his industry experience, personal observation, or record testimony.

Mr. Hill's Opinion 2, however, does not rely upon any such factor. Mr. Hill states first that the vessel "failed to provide a suitable dolly with functioning proper sized wheels to easily move the load across the grating on the catwalk" for the operation. Id. at ECF 4. Hill did not inspect the dolly at issue and instead supports his opinion by stating that "[i]t was reported by the

Plaintiff that the wheels on the discarded dolly were too small and had become jammed in the decking grate . . ." Id. Plaintiff did testify that the dolly "was jammed . . . on the deck grating[,]" Defs.' Statement of Material Facts ISO Mot. for Partial Summ. J. Ex. B, at 149:3–8 [Doc. No. 57-1], and the truth of this statement will turn on Plaintiff's credibility at trial, not Mr. Hill's opinion.

Hill next states that "[n]o heavy load safety plan was in place to mitigate these conditions . . ." Hill Report ECF 4 (Opinion 2) [Doc. No. 58-1]. He offers no evidence or support for this observation. "[N]either Daubert nor Rule 702 permits expert opinions grounded only in the unsupported assertions of the expert." See Gonzalez-Arroyo v. Drs.' Ctr. Hosp. Bayamón, Inc., 54 F.4th 7, 14 (1st Cir. 2022). Accordingly, Opinion 2 of Mr. Hill's expert report is excluded.

3. Prejudice Under Federal Rule of Evidence 403

Defendants' argument that Hill's testimony is unfairly prejudicial under Rule 403 is without merit. See Mem. ISO Mot. to Exclude 16 [Doc. No. 75]. As Defendants acknowledge, the purpose of applying Rule 403 to the expert inquiry is that "because of an expert's *stature qua* expert, jurors may assign more weight to expert testimony than it deserves." See id. (quoting United States v. Pires, 642 F.3d 1, 12 (1st Cir. 2011). As discussed supra, that concern is significantly reduced in a bench trial. See Zurn Pex Plumbing, 644 F.3d at 613; Brown, 415 F.3d at 1268. The court does not find that Mr. Hill's report and expert testimony prejudicial where this is a bench trial and his methodology and conclusions are sufficiently reliable.

C. *Ultimate Issue*

Defendants object to Hill's Opinion 8 because they contend it "decides on an ultimate fact of the litigation." Mem. ISO Mot. to Exclude 15 [Doc. No. 75]. In full, Opinion 8 reads:

> It is my opinion, based on my investigation and experience as a marine surveyor, as well as the master of vessels, that the vessel and her components and or lack therein, and the actions or lack thereof of the vessel's supervisory crew, allowed the on-ship physical conditions and transport practices to exist, which led directly to the personal injuries of the plaintiff.

Hill Report ECF 5 [Doc. No. 58-1]. Plaintiff contends that rather than speaking to an ultimate issue, "Opinion 8 is the express, cumulative application of Opinions 1 through 7 . . . [and] is factual causation of the kind safety experts routinely address, supported by the same record as the opinions preceding it." Opp'n. to Mot. to Exclude 15–16 [Doc. No. 76]. But in a negligence action, issues of breach—whether Defendants failed to provide reasonably safe equipment and transportation methods—and causation—whether that failure caused Plaintiff's injuries—are the ultimate questions for this court to decide. By contending that "the actions or lack thereof of the vessel's supervisory crew[] allowed the on-ship physical conditions and transport practices to exist," Hill Report ECF 5 [Doc. No. 58-1], Hill is speaking directly to the legal issue of breach. By concluding that such actions, or lack thereof, "led directly to the personal injuries of the plaintiff[,]" id., Hill is speaking directly to the issue of causation.

In a civil case, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). But "the Daubert Court imposed a special relevancy requirement." Ruiz-Troche v. Pepsi Cola of P. R. Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998). "To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." Id. (internal citations omitted). Here, Hill's "cumulative application of Opinions 1 through 7," offered without further evidence or citation, will not assist the court in understanding or determining a fact in issue. Accordingly, Opinion 8 is excluded from the Hill Report [Doc. No. 58-1].

## III. Conclusion

For the foregoing reasons, Defendants' Motion to Exclude Thomas Hill as an Expert [Doc. No. 74] is GRANTED as to Opinions 2, 8, and all other medical causation statements and DENIED as to all other opinions or statements.

IT IS SO ORDERED.

November 25, 2026

/s/ *Indira Talwani*
United States District Judge